UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 10-21707-CIV-HUCK/O'SULLIVAN

CARIDAD GOMEZ d/b/a
GOMEZ & SON FENCE CO.,
a Florida corporation,

      Plaintiff,

v.

BANKUNITED, f/k/a BANKUNITED, FSB
and FEDERAL DEPOSIT INSURANCE
CORPORATION,

      Defendants,

and

BANKUNITED, f/k/a BANKUNITED, FSB,

      Third-Party Plaintiff,

v.

JORGE MOLINA

      Third-Party Defendant.

_____/

**ORDER GRANTING FDIC'S RENEWED MOTION TO DISMISS**

      This matter is before the Court on Defendant FDIC's Renewed Motion to Dismiss (D.E. # 20). The FDIC seeks dismissal for lack of subject matter jurisdiction and for failure to state a claim. At a November 16, 2010 hearing on the FDIC's Renewed Motion to Dismiss, this Court requested supplemental briefing on the following issues: (1) when Plaintiff Caridad Gomez's cause of action/claim accrued; (2) whether Gomez's claim is subject to dismissal for failure to exhaust administrative remedies; (3) if Gomez's claim is not subject to dismissal for failure to exhaust administrative remedies, whether the insufficient assets determination of the FDIC moots

Gomez's claim. Notwithstanding Gomez's additional arguments, this Court lacks subject matter jurisdiction over Gomez's claim, and the FDIC's Renewed Motion to Dismiss is granted.

## FACTS

Gomez sued the FDIC to recover funds that Gomez's employee, Jorge Molina, converted when he worked as a salesman for Gomez's business, Gomez & Son Fence Co. While Molina, a third party defendant to this action, was employed by Gomez, he incorporated a business called "Gomes and Sons Fence Corp." and opened a checking account with BankUnited, FSB under that name. Beginning on April 24, 2003, the date of the incorporation for Gomes and Sons, Molina began endorsing, with Gomez's purported signature, checks that he received on behalf of Gomez & Son. Molina deposited those checks into his Gomes and Sons account with BankUnited, FSB; in turn, BankUnited, FSB cleared the checks and paid the funds to Molina. On May 21, 2009, the Office of Thrift Supervision closed BankUnited, FSB and appointed the FDIC as its receiver. A new entity–BankUnited–purchased certain BankUnited, FSB assets from the FDIC. Gomez did not become aware that Molina had been converting checks until November 15, 2009.

Gomez filed suit in state court against BankUnited, FSB and the FDIC on March 16, 2010. On May 25, 2010, the FDIC removed the action to this Court. The FDIC first sought dismissal of the case on July 1, 2010 because Gomez failed to exhaust the pre-suit administrative remedies prescribed by 12 U.S.C. § 1821, the Financial Institution Reform, Recovery and Enforcement Act of 1989 (FIRREA), which provides a comprehensive scheme for adjudicating claims against a failed depository institution. This Court stayed the case on August 2, 2010, pending Gomez's exhaustion of pre-suit administrative remedies.

On August 6, 2010, the FDIC disallowed Gomez's claim because Gomez filed it after the August 27, 2009 claim bar deadline. On September 1, 2010, Gomez moved to reopen the case because the FDIC disallowed her claim as untimely and denied it administrative review. The FDIC brought this renewed motion to dismiss on October 19, 2010, arguing that Gomez's failure to timely file a proof of claim is a jurisdictional bar that prevents this Court from adjudicating the claim against the FDIC. Gomez, in turn, asks the Court to deny the FDIC's renewed motion to dismiss because she did not discover her claim until after the bar date.

## LEGAL ANALYSIS

A. Standard of Review

In reviewing a motion to dismiss, all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts must be taken as true. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). A complaint must contain enough "facts to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), and the factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted).

"When a district court has pending before it both a 12(b)(1) motion and a 12(b)(6) motion, the generally preferable approach, if the 12(b)(1) motion essentially challenges the existence of a federal cause of action, is for the court to find jurisdiction and then decide the 12(b)(6) motion."*Jones v. State of Ga.*, 725 F.2d 622, 623 (11th Cir. 1984). "A motion to dismiss for lack of jurisdiction may be decided by the district court considering only the complaint, the complaint supplemented by undisputed facts reflected in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Meliezer v. Resolution Trust Co.*, 952, F.2d 879, 881 (5th Cir. 1992).

In this case, because facts determinative of this Court's jurisdiction arose after the complaint was filed, such as the FDIC's claim bar date and the FDIC's disallowance of Gomez's claim as untimely, those facts are considered in the Court's 12(b)(1) analysis. Additionally, because this Court lacks subject matter jurisdiction over Gomez's claim, a 12(b)(6) analysis is unnecessary.

B. Jurisdiction

### 1. Failure to timely file a claim is a jurisdictional bar

In *Paul v. F.D.I.C.*, the Eleventh Circuit determined that the timely filing of a claim under the FIRREA scheme was a jurisdictional requirement. *Paul v. F.D.I.C.*, 91 F.3d 110, 111 (11th Cir. 1996). Under the terms of the FIRREA, specifically §1821(d)(13)(D), a district court can

review the [FDIC's][1] denial of a claim only if the claimant has exhausted his administrative remedies. *Id*. §1821(d)(13)(D), "Limitation on judicial review," provides that

> Except as otherwise provided in this subsection, no court shall have jurisdiction over–
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed as a receiver, including assets which the Corporation may acquire from itself as such receiver; or
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. §1821(d)(13)(D).

In *Paul*, the [FDIC] insisted that Paul had not exhausted his administrative remedies because he did not file his claim until after the claim deadline.[2] *Id*. The district court agreed with [the FDIC] that the untimely filing of a claim warranted a dismissal for lack of subject matter jurisdiction in light of the undisputed facts of the case–that Paul was on notice about the [FDIC's] appointment as a receiver, that his claim arose before the bar date, and that he did not file his claim with the FDIC until after the bar date. *Id*. When Paul appealed, the [FDIC] sought to reverse the district court's dismissal by exercising its "discretion" under §1821(d)(5)(C)(ii) to consider Paul's claim "timely filed," and, thus, bring it within the purview of the district court's subject matter jurisdiction. *Id*. at 112.

The Eleventh Circuit determined that §1821(d)(5)(C)(ii) was not relevant to Paul's claim, as it gave the [FDIC] discretion to hear untimely claims only if the creditor lacked notice of the [FDIC's] appointment as a receiver before the claims deadlines. *Id*. Paul had notice of the [FDIC's] appointment, so his claim could not come under the exception. *Id*. The Eleventh Circuit

---

[1]In *Paul v. F.D.I.C.*, the Resolution Trust Corporation (RTC) was the receiver; during the case, however, it dissolved and was succeeded by the FDIC, which adopted the RTC's stipulation. Because the FDIC, as opposed to the RTC, was the party ultimately affected by the disposition of this case, and because it adopted the RTC's stipulation, the Court refers to the FDIC in lieu of the RTC.

[2]The FDIC's position in *Paul* indicates that it interpreted the phrase "exhaust administrative remedies" to require creditor compliance with all the procedures set forth in §1821(d)(3)-(13), including filing a claim before the bar date. This is the FDIC's position in the instant case.

then determined that because the [FDIC] did not have the power here to waive any objection to subject matter jurisdiction, the [FDIC] could not "forgive" Paul's untimely filing of a claim and waive "the exhaustion of administrative remedies [that is] a prerequisite to the district court's subject matter jurisdiction." *Id*. at 113. The Eleventh Circuit further determined that the [FDIC's] attempt to waive the requirement of a timely filing in order to clear the way for the district court to reverse its dismissal for lack of subject matter jurisdiction "[implied] a fact that would be essential to finding subject matter jurisdiction in the district court" and "the only fact that would appear to confer subject matter jurisdiction on the district court is the fact that Paul's claim was timely filed." *Id*.

### 2. Exceptions to the timely filing requirement

The plain language of an albeit complex statute[3] suggests that in the case of time barred claims, no further review is permitted by either the administrative review board or a district court once the claim is determined to be untimely. A creditor's failure to submit a timely claim to the FDIC, as required under §1821(d)(3)(B), results in the claim being time barred under §1821(d)(5)(C), which precludes administrative or judicial review of untimely claims. §1821(d)(3)(B), "Notice Requirements" establishes that

> The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution, shall–
> 
> (i) promptly publish a notice of the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice.

12 U.S.C. §1821(d)(3)(B). A creditor's failure to file a claim by the date specified in the notice triggers §1821(d)(5)(C)," Disallowance of claims filed after end of filing period," which provides that

> (i) In general Except as provided in clause (ii), claims filed after the date specified in the notice published under paragraph (3)(B)(i) shall be disallowed and such disallowance shall be final.

---

[3]"FIRREA's text comprises an almost impenetrable thicket, overgrown with sections, subsections, paragraphs, subparagraphs, clauses, and subclauses–a veritable jungle of linguistic fronds and brambles. In light of its prolixity and lack of coherence, confusion over its proper interpretation is not only unsurprising–it is inevitable." *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1151 (1st Cir. 1992).

> **(ii) Certain exceptions: Clause (i) shall not apply with respect to any claim filed by any claimant after the date specified in the notice published under paragraph (3)(B)(i) and such claim may be considered by the receiver if–**
> **(I) the claimant did not receive notice of the appointment of the receiver in time to file such a claim before such date**; and
> (II) such claim is filed in time to permit payment of such claim.

§1821(d)(5)(C) (emphasis added).

However, the Eleventh Circuit has accepted the [FDIC's] interpretation of the above-highlighted provision to allow administrative review of those claims that do not come into existence until after the bar date. *Stamm v. Paul*, 121 F.3d 635 (11th Cir. 1997). In *Stamm*, the Eleventh Circuit noted that

> [t]he [FDIC] essentially has interpreted the phrase, "in time to file such claim," within the exception to mean "at a time when the claimant could have filed such a claim." According to the [FDIC], therefore, where, as here, a claim arises after the initial 90-day, claim-filing period, the claimant did not receive notice of the [FDIC's] appointment at a time when he or she could have filed that claim and thus, the exception to the administrative bar date applies.

121 F.3d at 640. Therefore, claims that arise after the initial 90-day claim-filing period can be administratively reviewed and are not automatically disallowed for failure to file by the claims bar date. With the allowance of administrative review, however, comes the requirement of administrative exhaustion. The Eleventh Circuit has held that the "statutory exhaustion requirement generally applies to post-receivership as well as pre-receivership claims." *Id*. at 639. (citing *Damiano v. Federal Deposit Ins. Corp.*, 104 F.3d 328, 333 (11th Cir.1997)) (internal quotations omitted). "Post-receivership claims encompass at least two rough classes: (1) claims related to conduct by the failed financial institution that the aggrieved party neglects to assert until after the [FDIC] assumes control over the lending entity; and (2) claims based on the [FDIC's] actions as receiver." *Id*.

Gomez's claim, asserted after the FDIC was appointed as a receiver, for the funds she lost by BankUnited, FSB's cashing of forged checks, is a claim "related to conduct by the failed financial institution that the aggrieved party neglects to assert until after the [receiver] assumes control over the lending entity." It is within the first category of post-receivership claims and, thus, subject to the administrative exhaustion requirement.

In arguing that her claim is not subject to the exhaustion requirement, Gomez relies on the Second Circuit's *Carlyle Towers Condominium Association v. F.D.I.C.*, 170 F.3d 301, 310 (2d Cir. 1999), a case which interpreted the bar date to be similar to a statute of limitations that would be subject to "waiver, estoppel, or equitable tolling." Gomez relies on *Carlyle* by arguing that her situation is "unusual" and arises from a situation not adequately address by the Eleventh Circuit's otherwise controlling case, *Stamm*. However, while Gomez's specific situation may not be squarely addressed by any of the relevant Eleventh Circuit cases, the law derived from them still applies to her situation and bars her claim.

### 3. Gomez's Supplemental Briefing

*Accrual of "Conversion" Cause of Action*

Gomez contends that her claim is not subject to the FIRREA time bar because her cause of action did not accrue until after the bar date–essentially, that her claim would fall into the expanded class of §1821(d)(5)(C)(ii) exceptions that Eleventh Circuit determined in *Stamm* that it would recognize. Gomez's claim for conversion is a state cause of action, and when it accrued is a matter of state law. Under Florida law, "a cause of action accrues, for statute of limitations purposes, when the last element constituting the cause of action occurs." *Sundance Apartments I, Inc. v. General Elec. Capital Corp.*, 581 F.Supp.2d 1215, 1223 (S.D. Fla. 2008) (internal quotations and citations omitted). "As to the tort of conversion, that act constitutes the exercise of wrongful dominion and control over the property to the detriment of the rights of its actual owner. *Envases Venezolanos, S.A. v. Collazo*, 559 So.2d 651, 652 (Fla. App. 3 Dist.1990) (citing *Star Fruit Co. v. Eagle Lake Growers*, 160 Fla.130, 33 So.2d 858 (Fla. 1948). In *Envases Benezolanos, S.A.*, the case involved "the depleting of a bank account in one jurisdiction and its transmission to another," and the court determined that the "wrongful act is necessarily deemed to have taken place where the defendant effects a withdrawal and, to make a long story short, steals the money." *Id*. *See Allen v. Gordon*, 429 So.2d 369, 371 (Fla. App.1 Dist.1983) ( "The conversion took place . . . upon appellant taking the money from the accounts.").

In the instant case, then, the last element of the cause of action of conversion accrued when Molina "stole the money" from Gomez. Molina forged Gomez's signature and deposited checks made out to "Gomez & Son" into his Gomes and Sons account over the course of several years. Nonetheless, the last element of conversion accrued when Molina endorsed checks made

out to Gomez & Son with Gomez's signature and deposited those checks into his own account: long before the August 27, 2009 bar date.

Gomez argues that the accrual date is after the bar date because Florida's "delayed discovery doctrine" delays the accrual of the last element of her cause of action until that date she discovered her money had been stolen–November 15, 2009. Florida's "delayed discovery" doctrine "provides that a cause of action does not accrue until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action."*Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1280 (11th Cir. 2003) (citing *Hearndon v. Graham*, 767 So.2d 1179, 1184 (Fla. 2000). However, the delayed discovery doctrine, codified at Fla. Stat. § 95.031(2002), does not apply to Gomez's claim. *Id*. at 1281-82 (The delayed discovery doctrine cannot be applied to a cause of action absent a statutory basis).

The only statutory basis for the delayed discovery rule are those "statutes specifically governing fraud, products liability, professional and medical malpractice, and intentional torts based on abuse, each of which permits postponing accrual where there is delayed discovery." *Id*. at 1281 (citing *Davis v. Monahan*, 832 So.2d 708, 710 (Fla. 2002)). Moreover, the Florida Supreme Court has held that the delayed discovery rule does not apply to claims for breach of fiduciary duty, civil theft, conversion or unjust enrichment. *Mack v. Loizzo*, 2009 WL 4840200, *4 (S.D. Fla. 2009) (citing *Davis*, 832 So.2d at 709). Because Gomez's claim is one of conversion, she cannot rely on the delayed discovery doctrine to delay the accrual date of her claim until the November 15, 2009 discovery date.

*Dismissal for Failure to Exhaust Administrative Remedies*

Gomez argues that she need not comply with the statutory exhaustion requirement because her claims arise from a set of facts distinct from the Eleventh Circuit case upon which the FDIC relies, *Stamm*. *Stamm*, Gomez argues, is factually distinct from her case, and thus, not controlling, because it "involves the typical situation where the claim is known either before or after the appointment of the FDIC as receiver." Gomez argues that her case "involves a unique set of facts because of the late discovery of theft and defalcation until after the claim bar date." As any date after the claims bar date is after the appointment of the receiver, though Gomez might wish to distinguish her situation from the one in *Stamm*, her late discovery of her claim

after the bar date *is* a situation in which "the claim is known . . . after the appointment of the receiver."

This dubious distinction aside, the lynchpin in Gomez's argument is her contention that her claim did not accrue until she discovered the theft on November 15, 2009. However, she cannot rely on the delayed discovery doctrine to delay the accrual date of her claim until after the claims bar date. If she could, she could rely on the §1821(d)(5)(C)(ii) exception, as expanded by the Eleventh Circuit in *Stamm*, that allows the administrative review of claims that "arise after initial 90-day claims-filing period," to permit review of her claim.

Instead, Florida law indicates that Gomez's claim accrued when the last element of a cause of action for conversion occurred–when Molina began endorsing Gomez's signature on checks he then deposited into his Gomes and Sons account, which was before the August 27, 2009 claim bar date. Gomez, in turn, did not file her claim with the FDIC until August 2010–long after the August 27, 2009 claim bar date. Because claims like Gomez's that accrue before the bar date must be timely filed, and because timely filing is a requirement for exhaustion of administrative remedies, the FDIC's disallowance of Gomez's claim as "untimely" and, thus, subject to dismissal for failure to exhaust administrative remedies, was proper.

Moreover, because the Eleventh Circuit has determined that "the exhaustion of administrative remedies [is] a prerequisite to the district court's subject matter jurisdiction," Gomez's failure to exhaust administrative remedies deprives this Court of subject matter jurisdiction.

### *Insufficient Assets Determination*

Gomez's claim is subject to dismissal for failure to exhaust administrative review. Thus, the FDIC's argument that this Court should dismiss Gomez's claim based on the doctrine of prudential mootness need not be addressed.

## **CONCLUSION**

For the forgoing reasons, Defendant FDIC's Renewed Motion to Dismiss (D.E. #20) is granted.

DONE and ORDERED in Chambers, Miami, Florida, January 13, 2011.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
All counsel of record.